**SO ORDERED.**

**SIGNED this 20 day of June, 2007.**



_____
A. Thomas Small
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **NATIONAL GAS DISTRIBUTORS, LLC** | 06-00166-8-ATS |
|     **DEBTOR** | |
| | |
| **RICHARD M. HUTSON, II, Trustee for National Gas Distributors, LLC, f/k/a Paul Lawing Jr., LLC** | **ADVERSARY PROCEEDING NO.** |
|     **Plaintiff** | S-06-00267-8-AP |
|     v. | |
| **SMITHFIELD PACKING COMPANY, INCORPORATED** | |
|     **Defendant.** | |

### ORDER DENYING DEFENDANT'S MOTION TO AMEND

The matter before the court is the motion of the defendant, Smithfield Packing Company, Incorporated ("Smithfield"), for the court to amend its order of May 24, 2007, in which the court denied the defendant's Motion to Dismiss and Alternative Motion for Summary Judgment. The trustee filed a

response in opposition to the motion to amend, and the defendant filed a reply. A telephonic hearing was held on June 18, 2007.

Smithfield's motion to amend the order of May 24, 2007 requests the court to "eliminate or clarify certain statements in the Order that could be construed as factual findings regarding (i) whether the contract between Defendant and National Gas Distributors, LLC is of the type traded in financial or derivatives markets, and (ii) whether any of the contracts referenced in 11 U.S.C. § 101(53B) contemplate physical delivery to an end-user or are necessarily traded in financial or derivatives markets." Def.'s Mot. to Amend Order Den. Def.'s Mot. to Dismiss & Alt. Mot. for Summ. J. at pp. 1-2. In its supporting memorandum, Smithfield articulates its concern as follows:

> Notwithstanding the Court's statement in its Order that it did not rely on the Gotham Affidavit, the Order appears to contain certain factual findings (as set forth below) that appear to have no support in the record whatsoever, or, in certain cases, are supported only by the Gotham Affidavit. If these unsupported and premature factual statements are construed as factual findings, they could be extremely prejudicial to Defendant in this case.

Def.'s Mem. in Supp. of Def.'s Mot. to Amend Order Den. Def.'s Mot. to Dismiss & Alt. Mot. for Summ. J. at ¶ 6 (hereinafter "Smithfield Mem."). In particular, Smithfield cites these three "statements" as requiring either clarification or elimination:

> "The contract at issue before the court is . . . not a contract that is the subject of 'dealing in the forward contract trade.'" Order, p. 15.
>
> "Clearly, the contract before the court today . . . is not similar to any transaction typical in the swap markets." Order, p. 22.
>
> "The other agreements described in § 101(53B)(A)(i) are found in financial markets. They do not include contracts between a seller and an end-user for delivery of a product that happens to be a recognized commodity." Order, p. 24.

Smithfield Mem. at ¶ 9.

The trustee opposes the motion, primarily because in the trustee's view, no factual doors are permanently closed to Smithfield, and thus Smithfield has incurred no harm. The court will deny the motion to amend, for reasons that differ from those cited by the trustee.

Smithfield's motion to dismiss or, in the alternative, for summary judgment, brought before the court the ultimate question of whether the contract at issue is a swap agreement. In arguing that the contract is a forward contract and therefore a swap agreement, as those terms are defined by the Bankruptcy Code and under applicable case law, Smithfield thoroughly briefed and presented argument on the nature of forward contracts, forward agreements, and swap agreements. Smithfield attempted, in sum, to describe its agreement with the debtor in such a way that it would be included in the definition of swap agreement. The court considered Smithfield's arguments and disagreed that the agreement was a swap agreement. The court did not endeavor to determine the defining boundaries of "swap agreements" under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, or anything approaching an issue that broad.

The crux of the question that was before the court on Smithfield's motion was whether, as a matter of law, the contract between the parties came within the newly expanded definition of swap agreement. The only question properly before the court therefore was not a conceptual one, but was limited to whether the *specific contract* between National Gas and Smithfield[1] came within the parameters of a swap agreement as defined by § 101(53B).

---

[1] The content of this order and references to Smithfield translate and apply, in equal measure, to the identical motions to amend in the adversary proceedings between the trustee and Stadler's Country Hams, Inc. (S-06-00266-8-AP) and E.I. Du Pont De Nemours & Co. (S-06-00268-8-AP). Separate orders will be entered in those proceedings.

3

Smithfield's posture appears to be that the pleadings and documents referenced in its motion to dismiss or for summary judgment would support a ruling that, as a matter of law, the contract was a forward contract, a forward agreement, and a swap agreement, between swap participants. Smithfield appears not to have considered that the pleadings and documents also could support a ruling to the contrary.

Smithfield's first challenged "statement" is this: "The contract at issue before the court is . . . not a contract that is the subject of 'dealing in the forward contract trade.'" Order, p. 15. This "statement" goes to the question of whether the contract fits into the definition of "forward contract." Whether the contract was a "forward contract" was not dispositive, and the court accepted for purposes of the motion that the contract was a forward contract. Order, p.18. However, the court observed in its discussion of the possible interpretations of the definition that the contract was a simple supply contract, and "not a contract that is the subject of 'dealing in the forward contract trade.'"

The undisputed facts derived from the contract and its operation establish that *this particular contract* is not subject to dealing in the forward contract trade, but there may well be *similar* contracts that are or become subject to dealing in the forward contract trade, and there may be contracts concerning a "similar good, article, service or interest" that are or become subject to dealing in that trade. See Order, p. 15 n.3. Those questions were not before the court, and the court has no occasion to comment further on them now. After observing that the supply contract between Smithfield and National Gas is not a contract that is the subject of dealing in the forward contract trade, the court determined that for purposes of the motion, the contract nonetheless would be considered a forward contract. The challenged statement will not be further clarified or eliminated.

The two remaining challenged "statements" have to do with the kinds of contracts that are typical in swap markets, and the sort of agreements found in financial markets.  Smithfield argues that these statements "could be construed as conclusive findings by the Court that the contract between Defendant and NGD is not among the types of contracts that are subject to trade in financial or derivatives markets, and that none of the approximately forty-three (43) types of transactions enumerated in section 101(53B)(A)(i) of the Bankruptcy Code ever contemplate physical delivery of a commodity or other product to end-users or are not found in financial markets."  Smithfield Mot. at ¶ 10.

The challenged "statement" as to whether the contract is among the types of contracts subject to trade in the swap markets pertains to the court's observation that the contract would not come within the 1994 pre-BAPCPA definition of swap agreement.  Order, p. 22.  To the extent that this is construed as a finding, which it is not, any error would be harmless, as that pre-BAPCPA statute is not at issue.  Smithfield's other concern relates to the forty-three transactions listed in § 101(53B)(A)(i), but the court made no finding one way or another about them.  Instead, it held that Congress was focused on financial instruments that are themselves regularly the subject of trading, and "did not contemplate application of this statute to a contract of the kind at issue here, which is simply an agreement by a single end-user to purchase a commodity."  Order, p. 24.

With respect to both of these, Smithfield again focuses on the "types" of contracts that are subject to trade in recognized markets, apparently with an eye toward establishing, through evidence, that its contract with National Gas is of that "type" and therefore ought to be considered among them.  Again, the court refrained from making any conceptual findings concerning the "types" of contracts and types of

5

markets. Nor did the court make any findings of fact, beyond accepting the uncontroverted and relevant facts that supplied the basis for Smithfield's motion.[2]

The court determined, after review of the pleadings, the contract and related documents submitted by Smithfield, the relevant statutes, and the legislative history, that the contract *at issue here* is a simple supply contract. No doubt, there are varied types of contracts that come within the expanded boundaries of forward contracts, forward agreements, and swap agreements. Section 101(53B) makes that perfectly clear. The court makes no comment as to them, because the court's construction of the statute and its history revealed that *this* contract is not in that league.

The boundaries of what is or is not a swap agreement, and who is or is not a swap participant, are not clear, but the court need not draw bright lines delineating those boundaries to decide Smithfield's motion. What *is* fixed, precise, and the primary subject of the court's focus, is the existing contract between Smithfield and National Gas. Based on that contract and on Smithfield's understanding of the applicable statutes, Smithfield moved the court to find, as a matter of law, that the contract was a forward contract, a forward agreement, and a swap agreement, and that Smithfield and National Gas are swap participants. In other words, that the contract came within these boundaries. The court considered that question, and found, as a matter of law, based on the pleadings and the documents brought before the court by Smithfield itself, that the contract between Smithfield and National Gas could not be encompassed in the definition of swap agreement. That issue was decided and will not be relitigated at trial.

---

[2]During the hearing, Smithfield reiterated its concern that the Gotham affidavit played some role in the court's decision, but as stated in the order, the court did not consider or rely on the Gotham affidavit in any way.

Because that rationale is, in the court's view, adequately set forth in the order of May 24, 2007, Smithfield's motion to amend is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**